Terry agt. New York Central and Hudson River Railroad Company.

---

## SUPREME COURT.

LYMAN TERRY agt. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY.

*Railroads — Real estate taken for railroad purposes — When use for which land is taken not limited in time — What time such use shall continue within the discretion of the legislature.*

When the Tonawanda railroad, extending from Rochester to Attica, was organized, it obtained a charter extending over a period of fifty years. Under this charter and by virtue of the statute, it condemned and took a strip of land running through the plaintiff's farm. Subsequently the road was consolidated with several others, and became the New York Central and Hudson River road, and has ever since continued to use this strip as a part of its roadway. The charter of the New York

Central and Hudson River Railroad Company was granted for half a century. The original charter of the Tonawanda railroad has expired and plaintiff brings suit to eject the railroad company and recover possession of the land, claiming that with the expiration of the charter the land no longer belonged to the railroad company:

*Held,* that the public use for which the lands were originally taken is still continued, and such use was not limited in time. Although the corporation was at first created only for the term of fifty years, yet the legislature reserved to itself the right at any time to alter, modify or repeal the act.

*Held,* further, that whilst the plaintiff is the owner in fee of the lands in question, it is subject to a public use by the defendant for railroad purposes, and that the time that the use shall continue is within the discretion of the legislature, and that as the legislature has seen fit to authorize its consolidation with other corporations and to extend its corporate term for the period of five hundred years, such use has not as yet ceased and determined, and consequently the plaintiff cannot recover.

*Genesee Circuit, September* 1884.

TRIAL before the court without a jury.

*George Bowen,* for plaintiff.

*George C. Greene,* for defendant.

HAIGHT, *J.*—This is an action of ejectment brought to recover certain lands occupied by the defendant.

The Tonawanda Railroad Company was incorporated by chapter 241 of the Laws of 1832 for the term of fifty years from the passage of this act. It was authorized to construct and maintain a railroad with such appendages as may be deemed necessary from a point within the village of Rochester, in the county of Monroe, through the Tonawanda valley to the village of Attica in the county of Genesee. The corporation organized under this act in the year 1836 instituted proceedings in the court of chancery for the condemnation of the lands in question, and such proceedings were thereupon had; that commissioners of appraisers were appointed and did appraise the damages that the then owner

Terry agt. New York Central and Hudson River Railroad Company.

sustained by reason of the appropriation of the lands in question, and the same was confirmed by the court. That thereupon the railroad company entered into possession and ever since has continued to use and occupy the same for railroad purposes.

On the 8th day of October, 1850, an agreement of consolidation was entered into between the Tonawanda and the Attica and Buffalo Railroad Companies, pursuant to an act of the legislature passed April 9, 1850, authorizing the companies to consolidate and form a new corporation. The new corporation formed under this act and the agreement of consolidation was known as the Buffalo and Rochester Railroad Company. Under the provisions of the act all and singular of the property, franchises and rights of each of the companies were transferred to and vested in the new corporation.

On the 17th day of May, 1853, another agreement of consolidation was made between the Buffalo and Rochester Railroad Company and other companies forming the New York Central Railroad Company. This agreement was made pursuant to an act of the legislature passed April 2, 1853, authorizing the consolidation of such companies and providing for the transfer of the property and franchises of the various companies and the vesting of the same in the new company so organized.

On the 15th day of September, 1869, still another agreement of consolidation was entered into between the New York Central Railroad Company and the Hudson River Railroad Company, by which the New York Central and Hudson River Railroad Company was organized pursuant to chapter 917 of the Laws of 1869, and the property and franchises of the former companies were vested in the latter. Under and by virtue of the various agreements of consolidation referred to by the legislature, the property and franchises of the Tonawanda Railroad Company is now vested in the defendant,

It is claimed on the part of the plaintiff that the Tonawanda Railroad Company was only chartered for the term of fifty

years; that the land in question taken under the proceedings before the chancellor was only taken for the lifetime of the corporation; that the fifty years have now expired, and that the land reverts to the owner or his grantees.

There is no dispute about the facts. The question presented is one of great importance, and is not free from difficulty. It involves the right to the possession to all the lands in the state taken under the right of eminent domain by the railroads originally chartered for fifty years.

It is well settled that lands taken for railroad purposes are taken for a public use. It now becomes necessary to determine whether lands once appraised and devoted to a public use will revert to the owner so long as the public use is continued.

Section 1 of the act of incorporation of the Tonawanda Railroad Company creates the corporation and provides that "it shall be, and for the term of fifty years from the passage of this act, shall continue to be a body corporate and politic."

Section 16 of the act provides that "it shall be lawful for the said corporation to appropriate so much of such lands as may be necessary to its use for the purposes contemplated by this act on complying with the provisions of the six following sections." The six following sections provided for the presenting of a petition to the vice-chancellor for the appointment by the chancellor of appraisers, for the appraisal of the lands and for the confirmation thereof by the court. Section 22 provides that "on the payment of the damages thus assessed, together with the expenses of the assessment, the said corporation shall immediately become entitled to the use of the said lands for the purposes aforesaid." Section 28 provides that if the legislature of the state shall at the expiration of ten and within fifteen years make provision for the re-payment of the company of the amount expended by it, etc., that then the railroad with all of its fixtures and appurtenances shall vest in and become the property of the people of the state. Section 30 provides that "the legislature may at any time alter, modify or repeal this act."

The court of appeals in construing chapter 256 of the Laws of 1832, which is an act incorporating the Brooklyn and Jamaica Railway Company, and is substantially a copy of the act under consolidation, held that by the proceedings for the acquisition of lands for the railroad company the company became entitled to the use of the land for the purpose of operating its road; that the fee remained in the original owners, subject only to that use, and on the discontinuance of the use the owners were entitled to resume possession of the land (*Heard* agt. *The City of Brooklyn*, 60 *N. Y.*, 242; *Strong* agt. *The City of Brooklyn*, 68 *N. Y.*, 1). In these cases the lands had been acquired by proceedings under the statute for railroad purposes. The railroad company subsequently conveyed a portion of the lands so acquired to the city of Brooklyn for the purpose of enabling the city to open and lay out a street thereon. The court further held that the railroad company having ceased to use the land for railroad purposes, that the owner was entitled to re-enter and regain possession. The reasons of these decisions will become apparent when we come to examine the provisions of section 20 of the act. It provides that "the persons appointed to assess the damages shall ascertain and assess the damages which each individual owner will sustain by the appropriation of his land for the use or accommodation of such railroad or its appendages, and in assessing such damages the appraisers shall take into the account the benefit which will accrue to such owner by means of the passage of the said railroad through his land."

This act contemplates a benefit to be derived by the landowner by having a railroad constructed, and that the benefits to be derived therefrom are to be taken into consideration in determining the amount of damages that should be awarded to him. In this way the landowner is to pay for the benefits derived. Having paid for the same he is then entitled to have his lands used for railroad purposes. In other words, he is entitled to have the lands devoted to the public use for which they were taken, and as soon as that use ceases or is

determined he is entitled to re-enter and regain his lands. The case under consideration, however, is distinguishable from these cases decided in the court of appeals. In those cases the public uses for which the lands were taken had ceased and the railroad company had abandoned the land. In this case the public use for which the lands were originally taken is still continued. It thus becomes necessary to determine whether or not the use for which the lands were originally taken was limited in time. The corporation was at first created only for the term of fifty years. The legislature, however, reserved to itself by section 30 the right at any time to alter, modify or repeal the act. It thus had power to shorten or extend the term that the corporation should exist. The legislature has seen fit to authorize its consolidation with other corporations and to extend its corporate term for the period of 500 years. If, therefore, the lands were taken under this act for the lifetime of the corporation, subject to the power of the legislature to shorten, discontinue or extend such corporate life, then I fail to see how the plaintiff can recover. Were the lands so taken? In determining this question the act must be construed as a whole. The purpose and intent of the legislature must be determined by reading the various sections of the act in connection with each other. Section 1 creates the corporation for fifty years, but by section 30 the time may be lengthened, shortened or the corporation at any time discontinued. So that it is the same as if section 1 read, that the corporation shall be, and for the term of fifty years from the passage of this act, or such other term as the legislature shall provide, shall continue to be a body corporate and politic. Section 16 in giving authority to acquire and appropriate lands provides that it may do so " for the purpose contemplated by this act." And section 22 in providing that the railroad company may take possession of the land after payment of the damages as appraised, provides that it shall be entitled to the use of the said lands for the purposes aforesaid. The purposes aforesaid are the purposes contemplated

by this act, and the purposes contemplated by this act are to construct and maintain a railroad from the village of Rochester, in Monroe county, to the village of Attica, in the county of Genesee, for the term of fifty years, or for such other term as the legislature shall provide.

My conclusion is, that whilst I find the plaintiff to be the owner in fee of the lands in question, it is subject to a public use by the defendant for railroad purposes, and that the time that that use shall continue is within the discretion of the legislature; that such use has not as yet ceased and determined, and, consequently, the plaintiff cannot recover.

Judgment ordered for the defendant.